[No. B161881. Second Dist., Div. Four. Sept. 18, 2003.]

ALFONSO J. MEDINA et al., Plaintiffs and Appellants, v.
BOARD OF RETIREMENT, LOS ANGELES COUNTY EMPLOYEES
RETIREMENT ASSOCIATION et al., Defendants and Respondents.

COUNSEL

Silver, Hadden & Silver and Stephen H. Silver for Plaintiffs and Appellants.

David L. Muir and Margaret L. Oldendorf for Defendant and Respondent Board of Retirement of the Los Angeles County Employees Retirement Association.

Lloyd W. Pellman, County Counsel, David B. Kelsey, Assistant County Counsel, and Stephen R. Morris, Principal Deputy County Counsel, for Defendant and Respondent County of Los Angeles.

---

OPINION

**VOGEL (C. S.), P. J.—**

### INTRODUCTION

Plaintiffs Alfonso J. Medina and Kim E. Smith appeal from a judgment in favor of the Los Angeles County Employees Retirement Association (LACERA) and the County of Los Angeles (County) (collectively, respondents). After working for County as deputy sheriffs, both plaintiffs became deputy district attorneys. Having originally been classified as safety members of the applicable public retirement system, upon changing positions both erroneously continued to be considered safety members rather than general members. After several years, an audit revealed the error and LACERA reclassified plaintiffs, refunding to them the excess contributions they had made as safety members. Plaintiffs refused the refunds and filed the present petition for a writ of mandate and complaint, contending respondents are equitably estopped to reclassify their membership category, and that they obtained a vested right to be classified as safety members. The trial court denied the writ. We affirm, concluding that respondents would contravene statutory authority to classify plaintiffs as safety members.

### FACTUAL AND PROCEDURAL BACKGROUND

Smith was hired by the County as a deputy sheriff in September 1974. Medina was hired as a deputy sheriff in November 1978. Smith and Medina became members of LACERA in October 1974 and December 1978, respectively. (Gov. Code, § 31552.)[1] As deputy sheriffs, both were classified

---

[1] All further statutory references are to the Government Code unless indicated otherwise.

as safety members. (§ 31469.3.)[2] Safety members of LACERA, as opposed to general members, receive greater benefits upon retirement, are eligible for retirement at a younger age and with fewer years of service, and make larger contributions during their active employment. (See §§ 31663.25, 31672.)

In June 1983, Medina became an investigator for the County District Attorney's Office, a position expressly enumerated as a safety member. (§ 31470.2, subd. (a).) In July 1989, he became a deputy district attorney. Smith became a deputy district attorney in January 1990. Both erroneously remained classified as safety members rather than general members. Their annual benefit statements reflected this information. The County continued to make deductions from their paychecks for required employee retirement contributions and made employer contributions at the higher safety member rate.

After they became deputy district attorneys and up until June 2000, Smith and Medina received annual retirement statements from LACERA which identified them as safety members and had "Years of Service Credit" indicating continuous occupation of that status since their original hire dates with the County. They were also given annual benefit statements during that time which indicated they were classified in the safety retirement group.

Up until 1989, appellants would have received a copy of LACERA's annual report which included an explanation of persons eligible for safety membership. LACERA also published plan brochures in 1992 and 1997 that explained eligibility for safety and general membership categories.

During 2000, a member of the LACERA Board of Retirement questioned whether some employees were incorrectly classified as safety members

---

[2] Section 31469.3 provides: " 'Safety member' means any person who is any of the following: [¶] . . . [¶] (b) Any person employed by a county, subject to Section 31676.1 or 31695.1 . . . whose principal duties consist of active law enforcement or active fire suppression as described in Section 31470.2 and 31470.4 . . . ."

Section 31470.2, subdivision (a) provides: "All sheriffs, undersheriffs, chief deputies sheriff, jailers, turnkeys, deputies sheriff, bailiffs, constables, deputies constable, motorcycle officers, aircraft pilots, heads and assistant heads of all divisions of the office of the sheriff, detectives and investigators in the office of the district attorney, marshals, court service officers only in a county of the third class, as defined in Sections 28020 and 28024, and all regularly appointed deputy marshals are eligible." (Section 31470.4 refers to duties involving active fire suppression and is not applicable here.)

In 2002, section 31470.2 was amended to add subdivision (c). It provides: "Local prosecutors, local public defenders, and local public defender investigators are eligible if the county board of supervisors adopts a resolution by a majority vote making this subdivision and Section 31470.14 applicable in the county." (Stats 2002, ch. 1152, § 11.)

The Los Angeles County Board of Supervisors has not adopted this provision.

instead of general members. The Retirement Services Division conducted an audit, which revealed that about 25 active County employees in nonsafety positions were mistakenly still classified as safety members, having previously worked in safety positions. In June 2000, Smith and Medina were informed that LACERA was altering their status from safety members to general members, effective as of the time they began working as deputy district attorneys. They were given refunds of the contributions they overpaid, including interest at LACERA's assumed earnings rate for the applicable period, which was between 7 percent and 8.5 percent per annum. Both returned the checks to LACERA.

In July 2000, Smith and Medina, through counsel, requested that LACERA reconsider its decision to reclassify them. In a February 2001 letter, LACERA notified them that it had rejected their request, that they had exhausted all available administrative remedies, and they could institute judicial proceedings. They filed their petition and complaint in April 2001. Trial took place on July 8, 2002, at which time the trial court denied the petition, finding that Smith and Medina could not prevail on the ground of estoppel under the circumstances present here.

This appeal ensued.

## DISCUSSION

### I. Estoppel

■ Equitable estoppel may be asserted against the government in some circumstances. The applicable principles are set forth by the California Supreme Court in *City of Long Beach v. Mansell* (1970) 3 Cal.3d 462 [91 Cal.Rptr. 23, 476 P.2d 423] (*Mansell*). ■ The requisite elements for equitable estoppel against a private party are: (1) the party to be estopped was apprised of the facts, (2) the party to be estopped intended by conduct to induce reliance by the other party, or acted so as to cause the other party reasonably to believe reliance was intended, (3) the party asserting estoppel was ignorant of the facts, and (4) the party asserting estoppel suffered injury in reliance on the conduct. (*Id.* at p. 489.) " '[T]he doctrine of equitable estoppel may be applied against the government where justice and right require it. [Citation.]' [Citations.] Correlative to this general rule, however, is the well-established proposition that an estoppel will not be applied against the government if to do so would effectively nullify 'a strong rule of policy, adopted for the benefit of the public . . . .' [Citation.] The tension between these twin principles makes up the doctrinal context in which concrete cases are decided." (*Id.* at p. 493.) "The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to

such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*Id.* at pp. 496–497.)

In *Longshore v. County of Ventura* (1979) 25 Cal.3d 14 [157 Cal.Rptr. 706, 598 P.2d 866], the Supreme Court recognized the existence of cases which applied estoppel to the area of public employee pensions, in which the courts "emphasized the unique importance of pension rights to an employee's well-being." (*Id.* at p. 28.) "In each of these instances the potential injustice to employees or their dependents clearly outweighed any adverse effects on established public policy. *However, no court has expressly invoked principles of estoppel to contravene directly any statutory or constitutional limitations.* (See, e.g., *Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 308–309 [61 Cal.Rptr. 661, 431 P.2d 245]; *Farrell v. County of Placer* (1944) 23 Cal.2d 624, 630–631 [145 P.2d 570] . . . ; *Baillargeon v. Department of Water & Power* (1977) 69 Cal.App.3d 670, 679–681 [138 Cal.Rptr. 338] . . . ; *Crumpler v. Board of Administration* (1973) 32 Cal.App.3d 567, 584–585 [108 Cal.Rptr. 293] . . . .)" (*Id.* at pp. 28–29, italics added.)

■ The latter point is critical here: principles of estoppel may not be invoked to directly contravene statutory limitations. Contrary to appellants' contention, applying estoppel to the situation here to classify appellants as safety members would do just that.

Section 31560 provides: "A safety member shall remain a safety member only while the principal duties of his position consist of active law enforcement, active fire suppression or active lifeguard service as defined in Section 31469.3. While holding any other position in county service he shall remain a member but not a safety member." Section 31470.2, referenced in section 31469.3, enumerates among other positions that investigators in the office of the district attorney are eligible safety members. But there is nothing in the language of the relevant statutes to indicate that district attorneys are eligible. (See fn. 2.) Indeed, section 31470.2 was amended in 2002 to *add* local prosecutors to the eligible list, but only *if* the County Board of Supervisors votes to adopt the provision. The Board of Supervisors of Los Angeles County has not done so. In the Legislative Counsel's Digest accompanying the proposed amendment, the statement is made that "[u]nder existing law, . . . county prosecutors, public defenders, and public defender investigators are . . . general members of retirement systems established pursuant to the County Employees Retirement Law of 1937." (Legis. Counsel's Dig., Assem. Bill No. 2023 (2001–2002 Reg. Sess.).) The amendment serves to demonstrate that previously county prosecutors were not safety eligible. " 'The courts will not infer that the Legislature intended only to clarify the

law unless the nature of the amendment clearly demonstrates that this is the case [citation] or the Legislature itself states in a particular amendment that its intent was to be declaratory of the existing law. [Citation.]' " (*Denver D. Darling, Inc. v. Controlled Environments Construction, Inc.* (2001) 89 Cal.App.4th 1221, 1233 [108 Cal.Rptr.2d 213]; *Verreos v. City and County of San Francisco* (1976) 63 Cal.App.3d 86, 99 [133 Cal.Rptr. 649].)

Thus, appellants' assertion that the LACERA Board of Retirement does not utterly lack the power to decide that they could be classified as safety members has no merit. Appellants rely on section 31470.8, which provides that "In cases of doubt as to whether a person is eligible to become a safety member, the board [of retirement] shall decide."[3]

In light of the 2002 amendment of section 31470.2, we find unpersuasive the opinion of the Attorney General relied upon in *Crumpler v. Board of Administration, supra,* 32 Cal.App.3d 567, 577, to the effect that "active law enforcement service" includes persons who supervise the performance of individuals in the offices of the sheriff and district attorney who arrest and detain criminals, such that appellants arguably fall within the category of those engaged in active law enforcement.

The fact that the board did not possess the authority to classify appellants as safety members distinguishes this case from *Crumpler.* There, animal control officers working for a city police department were classified as safety members in the public retirement system and made contributions at the higher rate for several years, and were then reclassified to miscellaneous membership retroactively to their hire dates. The Court of Appeal held the city and retirement board were estopped to retroactively reclassify the petitioners, although it refused to preclude the board from reclassifying petitioners prospectively. Applicable there, former section 20124 (now § 20125) stated that "[The board shall] determine 'who are employees and is the sole judge of the conditions under which persons may be admitted to and continue to receive benefits under this system.' " (*Crumpler v. Board of Administration, supra,* at pp. 574–575.) The same breadth of discretion is simply not granted by section 31470.8 ("In cases of doubt as to whether a person is eligible to become a safety member, the board shall decide.").

As recognized by the *Crumpler* court, estoppel is barred where the government agency to be estopped does not possess the authority to do what it appeared to be doing. Here, respondents cannot be estopped from reclassifying appellants as general members, because they did not possess the authority to continue to classify appellants as safety members after they

---

[3] See section 31459, subdivision (c), defining "board."

became district attorneys even though they appeared to be doing so. (Cf. *Crumpler v. Board of Administration, supra,* 32 Cal.App.3d at p. 584 ["Nor may estoppel be avoided on the ground that to invoke it would enlarge the statutory power of the board. In view of the statutory powers conferred upon the board by section 20124, this is not a case where the governmental agency 'utterly lacks the power to effect that which an estoppel against it would accomplish.' (*City of Long Beach v. Mansell, supra,* 3 Cal.3d 462, 499)"]; see also *Fleice v. Chualar Union Elementary School Dist.* (1988) 206 Cal.App.3d 886 [254 Cal.Rptr. 54] [estoppel not applied where it was beyond school board's power to (erroneously) classify second-year teacher as permanent rather than probationary and on that basis grant tenure].) That being the case, we need not discuss whether the requisite elements of estoppel, such as reliance, were proven, nor whether "the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*Mansell* at pp. 496–497.)

## II. VESTED RIGHT

Alternatively, appellants argue that they have a vested contractual right to the pension promised them which they earned for the services they performed in reliance upon the representations, and that respondents' actions violate the contract clauses of the United States and California Constitutions. (U.S. Const., art. I, § 10; Cal. Const., art. 1, § 9.) We disagree.

When a claim is presented under the contract clause, it must first be determined "whether there is a valid contract to be impaired. The contract clause does not protect expectations that are based upon contracts that are invalid, illegal, unenforceable, or which arise without the giving of consideration. (*Crane v. Hahlo* (1922) 258 U.S. 142, 146 [66 L.Ed. 514, 42 S.Ct. 214]; *Ochiltree v. Iowa R. R. Contracting Co.* (1875) 88 U.S. (21 Wall.) 249, 252–253 [22 L.Ed. 546].) Nor does the contract clause protect expectations which are based upon legal theories other than contract, such as quasi-contract or estoppel. (*Freeland v. Williams* (1889) 131 U.S. 405, 414 [33 L.Ed. 193, 9 S.Ct. 763]; *Louisiana v. Mayor, etc., New Orleans* (1883) 109 U.S. 285, 289–290 [27 L.Ed. 936, 3 S.Ct. 211].)" (*Walsh v. Board of Administration* (1992) 4 Cal.App.4th 682, 696 [6 Cal.Rptr.2d 118].) ■ Any purported contract to give appellants the pension benefits of safety members was invalid, and thus the vested rights doctrine does not apply. The fact that the governing County Employees Retirement Law of 1937 does not have a mechanism for correcting mistakes does not alter the result. We agree with respondent LACERA that the absence of such a provision cannot in itself confer a vested right on members to hold LACERA to its mistakes,

where as here the mistake was the equivalent of attempting to form an unauthorized contract. (Cf. *Crumpler v. Board of Administration, supra,* 32 Cal.App.3d at p. 586.)

## DISPOSITION

The judgment is affirmed.

Hastings, J., and Curry, J., concurred.

On November 4, 2003, the opinion was modified to read as printed above.